IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

UNITED STATES OF AMERICA

v.                                                     Criminal Action No. 3:08cr313

TIMOTHY O. BROWN,

      Petitioner.


## REPORT AND RECOMMENDATION

      This matter comes before the Court for an evidentiary hearing and a Report and Recommendation as to the Motion to Vacate, Set Aside, or Correct a Sentence filed pursuant to 28 U.S.C. § 2255 ("§ 2255 motion") by Timothy O. Brown, a federal prisoner. On May 22, 2012, the Court held an evidentiary hearing. The parties have submitted post-hearing proposed findings of fact and conclusions of law (Docket Nos. 71, 73), and the matter is ripe for disposition. For the following reasons, the Court RECOMMENDS that Brown's claim of ineffective assistance of counsel based on his attorney's failure to file an appeal as instructed be DISMISSED, and the § 2255 motion be DENIED.

### I. Factual and Procedural Background

      On July 8, 2008, a federal grand jury indicted Brown, along with one co-defendant, in a two-count indictment. (Docket No. 1.) Count One charged Brown and his co-defendant with conspiracy to possess with the intent to distribute and to distribute fifty grams or more of cocaine base, in violation of 21 U.S.C. § 846.[1] Brown retained Brent A. Jackson to represent him throughout his criminal proceedings, and Jackson entered a Notice of Appearance in Brown's

---

[1] The Court dismissed Count Two on the Government's motion. (Docket No. 13.)

case on July 9, 2008. (Docket No. 4; May 22, 2012 Evid. Hr'g Tr. ("Evid. Hr'g Tr."), at 55:16-19.)

On September 19, 2008, the Government filed a Criminal Information, charging Brown in Count One with possession with the intent to distribute more than fifty grams of cocaine base, in violation of 21 U.S.C. § 841(a)(1). (Docket No. 22.) The same day, Brown waived indictment and pled guilty, with a written plea agreement and statement of facts, to Count One of the Criminal Information. (Sept. 19, 2008 Plea Hr'g Tr. ("Plea Hr'g Tr."), at 6:20-24; 22:23-23:2; Gov't's Ex. 2 ("Plea Agreement"); Gov't's Ex. 2A ("Statement of Facts").)

On December 11, 2008, the Honorable Henry E. Hudson sentenced Brown to 144 months of imprisonment, entering judgment the same day. (Docket No. 43; Dec. 11, 2008 Sentencing Hr'g Tr. ("Sentencing Hr'g Tr."), at 13:25-14:3.) This sentence fell within the advisory sentencing guideline range and below the statutory maximum. Brown did not file an appeal.

On February 23, 2010, the Court received Brown's § 2255 motion.[2] By Memorandum Opinion and Order entered December 29, 2011, the District Court denied all of Brown's claims, except his claim that his trial counsel rendered ineffective assistance by failing to file an appeal after being directed to do so. (Docket Nos. 54, 55.) The District Court referred this remaining claim to the undersigned Magistrate Judge for an evidentiary hearing. (Docket Nos. 54, 55.)

---

[2] The Government raised a statute of limitations defense in its post-hearing findings of facts and conclusions of law. As further discussed below, the resolution of the statute of limitations defense depends on an assessment of the credibility of the witnesses. *See infra* Part IV. Thus, the Court will first turn to the merits of Brown's claim and then discuss the statute of limitations defense.

This Court ordered that counsel be appointed to Brown and an evidentiary hearing scheduled as to the remaining issue raised in Brown's § 2255 motion: whether trial counsel rendered ineffective assistance by failing to file an appeal after being directed to do so. (Docket Nos. 62, 64, 67.) On May 22, 2012, the Court held an evidentiary hearing.

## II. Standard of Review and Burden of Proof

A petitioner collaterally attacking his or her conviction bears the burden of proving that the conviction imposed violated the United States Constitution or laws, that the court lacked jurisdiction to impose such a sentence, that the sentence exceeded the maximum authorized by law, or that the sentence otherwise is subject to collateral attack. 28 U.S.C. § 2255. The petitioner has the burden of proving the grounds for the collateral attack by a preponderance of the evidence. *Vanater v. Boles*, 377 F.2d 898, 900 (4th Cir. 1967); *White v. United States*, 352 F. Supp. 2d 684, 686 (E.D. Va. 2004). In a § 2255 proceeding, a court may hold an evidentiary hearing to "determine the issues and make findings of fact and conclusions of law." 28 U.S.C. § 2255(b). When making findings of fact, the court should determine the credibility of witnesses and reliability of other evidence. *See United States v. Roane*, 378 F.3d 382, 393-94, 409 n.15 (4th Cir. 2004).

## III. Findings of Fact

Supplementing the procedural events above, the Court makes the following findings of fact based on the record, as well as the testimony and exhibits submitted at the evidentiary hearing.

3

**A.    Brown's Guilty Plea**

1.    Before Brown decided to enter a plea of guilty, Jackson discussed with Brown the evidence against him, potential ramifications of a guilty plea versus a trial, possible cooperation with the Government, and the appeal process. (Evid. Hr'g Tr. 56:8-57:21, 64:25-65:3, 86:9-20.)

2.    The Government's case against Brown for the narcotics charges included potentially related evidence of firearm possession, and the Government threatened a separate charge for possession of a firearm in connection with a drug trafficking crime pursuant to 18 U.S.C. § 924(c). (Presentence Investigation Report ("PSR") ¶¶ 15, 17; Evid. Hr'g Tr. 58:18-24, 60:4-61:4.) Jackson discussed with Brown the ramifications of this potential separate firearm charge and informed Brown that this charge would carry a consecutive 60-month mandatory minimum. (Evid. Hr'g Tr. 58:18-24, 60:4-61:4, 83:24-84:3.) Jackson told Brown that he could avoid this separate firearm charge by pleading guilty to the narcotics charge. (Evid. Hr'g Tr. 84:13-19.) However, Jackson made clear that the firearm remained as evidence in the underlying narcotics offense, and that they had no control over how Probation would interpret the facts in calculating the advisory sentencing guidelines. (Evid. Hr'g Tr. 61:7-12, 84:20-85:1.)

3.    Brown decided to plead guilty, avoiding the separate firearm charge and leaving open the possibility of receiving a Rule 35 sentence reduction based on his future cooperation. (Evid. Hr'g Tr. 50:10-16, 61:1-4.)

4.    On September 19, 2008, the Honorable Dennis W. Dohnal conducted Brown's plea colloquy, during which Brown pled guilty to Count One of the Criminal Information.

5.    Under oath, Brown informed the Court that he had had a sufficient opportunity to discuss the case with Jackson and that he was satisfied with Jackson's representation:

> Q     Do you feel you've had a sufficient opportunity to discuss the charge and sentencing possibilities with your attorney, Mr. Jackson?
> A     Yes, sir.
> Q     Do you feel you've had a sufficient opportunity to talk to him about everything about your case including any and all possible defenses, as well as the terms of this written plea agreement that we will go over in a moment?
> A     Yes, sir.

(Plea Hr'g Tr. 12:10-21; *see also* Plea Hr'g Tr. 10:9-20, 12:22-13:2, 13:14-19.)

6.     Brown confirmed he decided to plead guilty to the charge because he was in fact guilty of possession with intent to distribute fifty grams or more of cocaine base. (Plea Hr'g Tr. 16:22-17:2.)

7.     Brown signed the written plea agreement, indicating that he had carefully read and understood the plea agreement, had reviewed it with his attorney, and voluntarily agreed to it. (Plea Agreement 12.) Brown also confirmed this under oath during the plea colloquy. (Plea Hr'g Tr. 17:6-10.) At the evidentiary hearing, Brown testified that he had read and signed the plea agreement and had reviewed it in detail. (Evid. Hr'g Tr. 26:19-21, 34:16-17, 48:1-4; *see also* Evid. Hr'g Tr. 65:23-25.)

8.     Brown also signed the statement of facts, indicating that he had reviewed them with his attorney and agreed to the truthfulness and correctness of the stated facts. (Statement of Facts 3.) Brown confirmed this under oath during the plea colloquy. (Plea Hr'g Tr. 24:3-25:5.) In the statement of facts, Brown admitted that for relevant conduct purposes he possessed at least fifty grams but less than 150 grams of cocaine base. (Statement of Facts 2.)

9.     During the plea colloquy, the Court informed Brown of the penalties associated with the charge, including "[a] minimum mandatory term of imprisonment of ten years" and "up to a possible term of life imprisonment." (Plea Hr'g Tr. 11:1-2.) The plea agreement listed these

5

penalties as well. (Plea Agreement ¶ 1.) The plea agreement made clear that no agreement as to

sentencing existed, that the Court would determine his sentence guided by the Sentencing

Guidelines and 18 U.S.C. § 3553(a), and that the Court could depart upward or downward from

the Sentencing Guidelines if appropriate. (Plea Agreement ¶ 5.) The Court informed Brown that

any estimate regarding the ultimate sentence imposed could only be a prediction, and did not

constitute a promise on which he could rely to enter into a guilty plea. (Plea Hr'g Tr. 20:17-

21:3.)

       10.    The plea agreement included the following language:

> This written agreement constitutes the complete plea agreement between the United States, the defendant, and the defendant's counsel. The defendant and his attorney acknowledge that no threats, promises, or representations have been made, nor agreements reached, other than those set forth in writing in the plea agreement, to cause the defendant to plead guilty. Any modification of this plea agreement shall be valid only as set forth in writing in a supplemental or revised plea agreement signed by all parties.

(Plea Agreement ¶ 17.) During the plea colloquy, Brown confirmed under oath that no one had

made any other promises, other than those contained in the plea agreement. (Plea Hr'g Tr. 14:2-

5.) At the evidentiary hearing, Brown agreed that the provisions of the plea agreement

constituted the complete agreement. (Evid. Hr'g Tr. 52:18-25, 53:1-4, 66:14-21.)[3]

---

[3] At the evidentiary hearing, Brown testified he believed that, under the plea agreement, he would not receive any sentencing enhancement based on the firearm. (Evid. Hr'g Tr. 28:11-19.) Brown conceded that the plea agreement did not contain this alleged understanding, but contends that Jackson told him about this understanding, a contention that Jackson denied. (Evid. Hr'g Tr. 46:20-47:9, 85:11-21.) The Court finds Brown's testimony about the alleged sentencing agreement not credible when viewed alongside Jackson's testimony and Brown's prior testimony during the plea colloquy. *See supra* ¶¶ 2, 9-10.

11.     The plea agreement contained a waiver of appeal provision, stating "the defendant knowingly waives the right to appeal the conviction and any sentence within the statutory maximum described above (or the manner in which that sentence was determined)." (Plea Agreement ¶ 6.) The Court also informed Brown about this appeal waiver during the plea colloquy. (Plea Hr'g Tr. 17:17-20.) At the evidentiary hearing, Brown testified that he remembered Judge Hudson discussing the appeal waiver and understood that he had waived his right to appeal his conviction and sentence. (Evid. Hr'g Tr. 27:2-6, 34:22-25, 35:1-9, 53:20-22.)

12.     The plea agreement also contained a cooperation agreement, in which Brown agreed to cooperate fully and truthfully with the United States and provide information regarding criminal activity. (Plea Agreement ¶¶ 12-14; Evid. Hr'g Tr. 50:7-13.) The United States reserved the right to seek any reduction in sentence based on his cooperation. (Plea Agreement ¶ 15.) During the plea colloquy, the Court discussed these provisions of the plea agreement with Brown. (Plea Hr'g Tr. 19:2-20:7.) Brown understood that if he cooperated with the Government, he might be entitled to a reduction in sentence. (Evid. Hr'g Tr. 50:14-16, 64:25-65:3, 86:9-20.) Jackson had explained to Brown that the Government would not move for a sentence reduction if Brown breached his plea agreement. (Evid. Hr'g Tr. 72:23-73:1.)[4]

---

[4] At the evidentiary hearing, Brown testified that he never asked Jackson about and did not know what effect an appeal would have on his chances for a sentence reduction. (Evid. Hr'g Tr. 50:17-51:2.) Regardless, Brown also testified that he knew that filing an appeal would be a breach of his plea agreement. (Evid. Hr'g Tr. 53:23-25.) The plea agreement clarifies that in the event of a breach, "[t]he United States will be released from its obligations under this agreement, including any obligation to seek a downward departure or a reduction in sentence." (Plea Agreement ¶ 16(a).) Further, as discussed below, the Court finds Jackson's testimony more credible than Brown's testimony. *See infra* Part III.F.

13.     Prior to taking a plea, the Court gave Brown a final opportunity to ask any questions about the plea agreement. (Plea Hr'g Tr. 20:14-16.) Brown then entered a plea of guilty to Count One of the Criminal Information. (Plea Hr'g Tr. 22:23-23:2.) The Court accepted Brown's plea of guilty as voluntarily, knowingly, and intelligently entered with the understanding of the nature of the charge and the consequences of the plea. (Plea Hr'g Tr. 26:1-16.)

**B.      Brown's Sentencing Hearing**

14.     Brown's PSR concluded that Brown's offense level totaled 29, that he fell within criminal history category IV, and that his advisory guideline range therefore fell between 121 to 151 months of imprisonment. (PSR Worksheet D.)

15.     Jackson discussed the PSR and guideline computations with Brown, and on December 1, 2008, Brown, by counsel, filed objections to the guideline computations in the PSR. (Evid. Hr'g Tr. 61:19-62:2; Def.'s Objection to Presentence Report 1-2.) Brown objected to the two-point enhancement received for possession of a firearm and to criminal history points assigned to two prior misdemeanor convictions. (Def.'s Objection to Presentence Report 1-2.)

16.     On December 11, 2008, Judge Hudson presided over Brown's sentencing hearing. Jackson confirmed that he had received a copy of the PSR and the computation of the guidelines and had discussed both documents with Brown. (Sentencing Hr'g Tr. 2:15-21.) The Court announced that the probation officer had calculated a total offense level of 29 with a criminal history category of IV, yielding a sentencing range of 121 to 151 months. (Sentencing Hr'g Tr. 3:17-21.)

17.     When the Court inquired about the objections filed on Brown's behalf, Jackson withdrew the objections. (Sentencing Hr'g Tr. 4:5-9.) Jackson explained that, after conversing

with the prosecutor and the probation officer and after performing independent research, he

realized the objections had no merit and the guidelines had been properly computed.[5]

(Sentencing Hr'g Tr. 3:24-4:12.) Brown, who stood by Jackson's side, remained silent as

Jackson withdrew the objections to the PSR. (Evid. Hr'g Tr. 48:12-15, 49:3-13, 49:16-18.)

      18.     During argument as to sentencing, the Government recommended a sentence at

the high end of the advisory guideline range. (Sentencing Hr'g Tr. 7:17-19; Position of U.S.

with Respect to Def.'s Sentencing Factors 1.) Jackson indicated that Brown hoped to receive a

Rule 35 sentence reduction during his argument: "[F]rom the very beginning the defendant has

been cooperative with the government. And we hope to return to this Court at a later date so that

his cooperation could be recognized." (Sentencing Hr'g Tr. 8:4-7.)

      19.     Prior to imposing a sentence, Judge Hudson gave Brown an opportunity to

address the Court: "Mr. Brown, anything you'd like to add, sir, before I decide what sentence is

appropriate in your case?" (Sentencing Tr. 11:11-12.) In response, Brown stated, "I'm here . . .

to accept full responsibility for what I've done. . . . I'm here to accept whatever you give to me."

(Sentencing Tr. 12:5-11.) Brown did not challenge the firearm enhancement and did not attempt

to renew any objections to the guideline computations.

      20.     Referring to Brown's cooperation in hopes of receiving a Rule 35 sentence

reduction, the Court said:

> I hope you'll be back here before this Court at some point in time
> for some adjustment to your sentence based upon substantial
> assistance. If that is so, as I mentioned to Mr. Jackson, you'll
> receive full credit for every bit of cooperation that you extend, and

---

[5] At the evidentiary hearing, Jackson testified that he could not remember whether he withdrew the objections or why he would have done so unless for some strategic purpose. (Evid. Hr'g Tr. 62:11-17, 88:24-25.) However, the transcript of the sentencing hearing reveals the reason Jackson withdrew the objections.

> it can significantly reduce your sentence. That's a decision that you've got to make.

(Sentencing Hr'g Tr. 12:12-19; Evid. Hr'g Tr. 51:3-14.)

21.     Considering the amount of cocaine base involved, Brown's criminal history, and the factors under 18 U.S.C. § 3553, the Court sentenced Brown to 144 months of imprisonment, a sentence within the advisory guideline range and below the statutory maximum. (Sentencing Hr'g Tr. 13:5-14:3.)

22.     At the conclusion of the sentencing, the Court stated to Brown:

> As part of your plea agreement, Mr. Brown, you've waived your right of appeal as to all sentencing issues in this case. But if you feel I have done anything unlawful that is not covered by that waiver, and you wish to appeal that decision to the U.S. Court of Appeals for the Fourth Circuit, let Mr. Jackson know because that appeal must be noted within ten days of today.

(Sentencing Hr'g Tr. 16:21-17:3.)[6]

**C.    Brown's Account of His Post-Sentencing Communications with Jackson**

23.     At the evidentiary hearing, Brown testified that, immediately after sentencing and while still in the courtroom, he asked Jackson why he did not argue the objection to the firearm enhancement. (Evid. Hr'g Tr. 27:17-28:10.) In response, Jackson allegedly said that he would discuss the matter with Brown in the detention area of the courthouse. (Evid. Hr'g Tr. 27:21-22.)

24.     Brown testified that Jackson came to see him in the detention area of the courthouse immediately after sentencing. (Evid. Hr'g Tr. 28:20-22.) Brown again asked why

---

[6] At the evidentiary hearing, Brown testified that he did not remember Judge Hudson saying that he had waived his right to appeal as to all sentencing issues, but only remembers Judge Hudson instructing him to speak with Jackson if he wished to appeal. (Evid. Hr'g Tr. 27:7-12, 35:22-25, 52:4-8.) Regardless, Brown testified that he remembered Judge Hudson discussing the appeal waiver during the plea colloquy and understood that he had waived his right to appeal his conviction and sentence. (Evid. Hr'g Tr. 27:2-6, 34:22-25, 35:1-9, 53:20-22.)

Jackson failed to argue the objection to the firearm enhancement.  (Evid. Hr'g Tr. 28:23-29:1.)

In response, Jackson allegedly said that it would be better to appeal the sentence.  (Evid. Hr'g Tr.

29:3-5.)  Brown then allegedly asked Jackson to appeal his sentence, specifically the two-point

enhancement he received based on the firearm.  (Evid. Hr'g Tr. 29:6-8, 40:9-16.)  According to

Brown, Jackson agreed to appeal Brown's sentence.  (Evid. Hr'g Tr. 29:9-13.)  Jackson then

allegedly promised to visit Brown at the jail to discuss the details of the appeal, but Jackson

never came to the jail to see him.  (Evid. Hr'g Tr. 29:16-20.)

       25.     Brown testified that he telephoned Jackson's office several times after his

sentencing hearing to inquire about his appeal and spoke to Jackson's secretary, Tina, each time.

(Evid. Hr'g Tr. 29:21-30:2.)  Brown allegedly asked Tina about his appeal, and Tina assured

Brown that Jackson was doing his job and that she would relay the message to Jackson.  (Evid.

Hr'g Tr. 30:5-12.)  Jackson never returned Brown's calls, and by May 2009, Brown assumed that

Jackson had never filed an appeal.  (Evid. Hr'g Tr. 30:15-20.)

       26.     At the evidentiary hearing, Yolanda White, the mother of one of Brown's

children, testified on Brown's behalf.  (Evid. Hr'g Tr. 6:15.)  Ms. White testified that she

contacted Jackson's office in January, March, and June of 2009 to ask when Brown would be

back in court regarding his appeal.  (Evid. Hr'g Tr. 7:9-14.)  During the January and March 2009

phone calls, Ms. White allegedly spoke with Tina and asked about Brown's appeal.  (Evid. Hr'g

Tr. 7:15-19, 8:19-9:7.)  In response, Tina said she would give the message to Jackson and

indicated that Brown was working on the appeal.  (Evid. Hr'g Tr. 7:19-21, 8:24-9:7.)  Jackson

never returned Ms. White's phone calls.  (Evid. Hr'g Tr. 7:21-22, 9:8-10.)

       27.     Ms. White testified that she again spoke with Tina in June 2009, when Ms. White

called Jackson's office to ask for copies of court documents and to inquire about when Brown

would be back in court. (Evid. Hr'g Tr. 9:13-21.) At this time, Tina informed Ms. White that she needed permission from Brown before Jackson could speak directly to her. (Evid. Hr'g Tr. 9:19-21.)

28.     Ms. White had previously submitted a declaration in support of Brown's § 2255 motion, which she had signed under the penalty of perjury on February 23, 2012. (Evid. Hr'g Tr. 10:20-22, 12:10-12; Pet'r's Ex. 1 ("Declaration of Yolanda White"), at 3.) At the evidentiary hearing, Ms. White testified that she did not compose her declaration, but verbally discussed her recollection of events with Brown. (Evid. Hr'g Tr. 10:23-24, 11:6-8, 12:23-25, 13:21-23, 31:18-24.) Brown prepared the declaration and mailed it to Ms. White. (Evid. Hr'g Tr. 11:2-5, 41:21-42:4.) At the evidentiary hearing, Ms. White confirmed the truth of the information contained in her declaration. (Evid. Hr'g Tr. 12:13-17.)

29.     However, Ms. White later admitted that she only "skimmed over" or "vaguely" read her declaration prior to signing it. (Evid. Hr'g Tr. 14:23-15:3.) Ms. White also admitted that paragraph nine of her declaration, stating that she spoke with Jackson on two occasions during which Jackson assured her that an appeal was being prepared, contained inaccurate information. (Evid. Hr'g Tr. 14:18-22; Declaration of Yolanda White ¶ 9.) Ms. White admitted that she never spoke directly with Jackson about Brown's appeal. (Evid. Hr'g Tr. 10:10-13, 15:16-19.)

30.     Barbara Newton, Brown's mother, also testified on behalf of Brown during the evidentiary hearing. (Evid. Hr'g Tr. 18:13-17.) Ms. Newton testified that she spoke with Jackson once in 2009 about Brown's appeal, although she could not recall the month that conversation occurred. (Evid. Hr'g Tr. 19:2-13, 25.) During this conversation, Jackson allegedly informed Ms. Newton that Brown's "appeal was in effect." (Evid. Hr'g Tr. 20:1-2.)

Ms. Newton also testified that she spoke with Tina three or four times in 2009, although again she could not recall specific dates or months. (Evid. Hr'g Tr. 20:13-23.) During these conversations, Tina allegedly told Ms. Newton that Brown's appeal had been filed. (Evid. Hr'g Tr. 21:7-8.)

31.    Ms. Newton had previously submitted a declaration in support of Brown's § 2255 motion, which she had signed under the penalty of perjury on February 23, 2012. (Evid. Hr'g Tr. 22:10-12, 24:21-22; Pet'r's Ex. 2 ("Declaration of Barbara Newton").) Ms. Newton testified that she did not compose this declaration and did not speak with Brown about what information would be in the declaration. (Evid. Hr'g Tr. 22:15-16, 24:5-11.) Brown testified that he prepared the declaration using information from verbal conversations with his mother and then mailed it to her. (Evid. Hr'g Tr. 31:18-24, 41:21-42:4.) When asked if the declaration included "an accurate statement of information," Ms. Newton responded in the following manner: "No.  I don't even know what it's about really." (Evid. Hr'g Tr. 24:23-25.) Ms. Newton admitted she did not read the declaration before signing it, but only "glanced through it." (Evid. Hr'g Tr. 25:1-3.) According to her own testimony, she "saw [her] son's name on it so [she] just signed it." (Evid. Hr'g Tr. 25:4-5.)

### D.    Jackson's Account of His Post-Sentencing Communications with Brown

32.    Jackson candidly admitted at the evidentiary hearing that he did not remember details of conversations or sentencing proceedings from 2008. (Evid. Hr'g Tr. 73:5-9.) Based on his standard operating procedure, Jackson testified that he would have met with Brown in the detention area immediately after his sentencing. (Evid. Hr'g Tr. 73:14-23.) Jackson testified that no discussion of an appeal occurred. (Evid. Hr'g Tr. 77:19-20.) Jackson testified that Brown did not request an appeal of his sentence after sentencing or at any time subsequent to

sentencing. (Evid. Hr'g Tr. 64:14-24.) Jackson testified that had Brown requested an appeal of his sentence in a timely fashion, he would have filed the notice of appeal after consultation. (Evid. Hr'g Tr. 71:24-25, 87:7-8.)[7]

33.    Jackson testified that his standard operating procedure includes a practice of memorializing conversations by letters. (Evid. Hr'g Tr. 62:18-21.) If Brown had requested an appeal, based on his standard operating procedure, Jackson would have sent a letter to Brown confirming that request. (Evid. Hr'g Tr. 62:24-63:1.) Jackson testified that he had looked through Brown's file and found no indication that Brown had requested that he or his office file an appeal. (Evid. Hr'g Tr. 63:13-19, 71:21-24.)

34.    Jackson testified that he never spoke to any third party, including Ms. White and Ms. Newton, about Brown's alleged request to appeal his sentence and that Brown never authorized Jackson to speak with any third party about his case. (Evid. Hr'g Tr. 67:16-68:9, 70:23-71:2.) Jackson performed a search of his e-mail and Brown's case file and found only one instance in which someone called his office on behalf of Brown following the sentencing hearing. (Evid. Hr'g Tr. 69:2-13.) Jackson produced an e-mail indicating that Ms. White called his office on June 15, 2009, six months after Brown's sentencing, to request copies of Brown's plea agreement, criminal information, docket sheet, and transcripts. (Evid. Hr'g Tr. 68:21-69:1, 80:13-15; Pet'r's Ex. 3, Attach. D, E-mail from Jackson Law Group, P.C. to Brent Jackson (June 15, 2009).) Jackson testified he never spoke with Ms. White, but mailed copies of the court documents directly to Brown. (Evid. Hr'g Tr. 69:14-15, 71:7-14.)

---

[7] During the evidentiary hearing, Jackson recognized that he would have had an ethical obligation to file a notice of appeal if Brown had requested an appeal regardless of whether Brown ultimately retained him for appellate purposes. (Evid. Hr'g Tr. 77:6-15.)

35.     Jackson testified that a sentence reduction based on cooperation remained a possibility for Brown until he filed his § 2255 motion. (Evid. Hr'g Tr. 65:4-7, 75:21-23.) Although Jackson did not contact Brown about a potential sentence reduction, Jackson continued to contact the Government about that possibility following Brown's sentencing. (Evid. Hr'g Tr. 75:24-76:20.)

### E.     Post-Sentencing Correspondence

36.     By letter dated June 17, 2009, Jackson sent Brown the requested copies of his docket report, plea agreement, and criminal information, and explained that the transcripts would need to be requested from the Court. (Pet'r's Ex. 3, Attach. C, Letter from Brent A. Jackson to Timothy Brown (June 17, 2009).)

37.     By letter dated August 10, 2009, Brown requested that Jackson send him complete copies of his case materials. (Pet'r's Ex. 3, Attach. B, Letter from Timothy Brown to Brent A. Jackson (Aug. 10, 2009).)  In this letter, Brown did not protest Jackson's alleged failure to file a notice of appeal. (Evid. Hr'g Tr. 52:9-13; Pet'r's Ex. 3, Attach. B, Letter from Timothy Brown to Brent A. Jackson (Aug. 10, 2009).)

### F.     Jackson's Version of Events Is More Credible than Brown's

38.     Having considered the above and having weighed the credibility of the witnesses, the Court finds that Brown never expressly requested that Jackson file an appeal of his case and never expressed an interest in appealing his case.  Brown's testimony otherwise lacks credibility for numerous reasons.

39.     First, the record demonstrates that Jackson withdrew the objections to the guideline computations in open court and in Brown's presence.  At the sentencing hearing, Brown voiced no concern when Jackson withdrew the objections to the guideline computations,

15

even when given the opportunity by Judge Hudson to say anything before the imposition of a sentence. Thus, Brown's current claim that he wished to appeal his sentence based on Jackson's failure to argue the objections to the guideline computations cannot be reconciled with the record before the Court.

40.     Second, Brown's purported request to appeal cannot be reconciled with the potential to receive a sentence reduction based on Brown's cooperation. Brown pled guilty to avoid an additional 60-month mandatory minimum and left open the possibility of further reducing his sentence through cooperation with the Government. During Brown's sentencing hearing, Jackson informed the Court that cooperation and a potential sentence reduction were possibilities. Judge Hudson informed Brown that he would receive credit in the form of a sentence reduction for any cooperation. Jackson testified that after sentencing he kept in contact with the Government about a potential sentence reduction. Considering this record, Brown would not have requested that Jackson appeal his sentence, a request that would jeopardize his chance at receiving a sentence reduction.[8]

41.     Third, the Court gives little to no weight to the testimony provided by Ms. White and Ms. Newton. Ms. White confirmed under oath on two occasions that the information contained in her declaration was true, but then admitted that she merely skimmed the declaration

_____

[8] As discussed above, the Court discredits Brown's claim that he did not know what effect an appeal would have on his chances of receiving a sentence reduction. *See supra* note 4. Brown admitted that he knew that filing an appeal would be a breach of his plea agreement, and the plea agreement stated that the Government would be released from any obligation to seek a reduction in sentence in the event Brown breached the plea agreement.

Brown's testimony that he did not believe his requested appeal would breach the plea agreement likewise lacks the ring of truth. Brown contends that he did not intend to appeal the plea agreement, but only the firearm enhancement. (Evid. Hr'g Tr. 54:4-14.) However, Brown admitted he understood that he had waived his right to appeal his conviction *and sentence* under the plea agreement. (Evid. Hr'g Tr. 27:2-6, 34:22-25, 35:1-9, 53:20-22.)

before signing it under penalty of perjury and that it contained inaccurate information. Similarly,

Ms. Newton admitted that she did not really know what her declaration contained and that she

signed it under penalty of perjury after merely glancing through it. Finally, the post-sentencing

correspondence in the record comports with Jackson's version of events and not with that of any

of Brown's witnesses.

42. Ultimately, the Court finds Jackson's version of events to be more credible and

supported by the contemporaneous record.

### IV. Analysis

A. **Standard of Review for a Claim of Ineffective Assistance of Counsel for Failure to File an Appeal**

The standard set forth by the Supreme Court of the United States in *Strickland v.*

*Washington* governs claims of ineffective assistance of counsel. 466 U.S. 668 (1984). In

*Strickland*, the Supreme Court held that the Sixth Amendment guaranteed a criminal defendant's

right to reasonably effective assistance of counsel. *Id.* at 687. To prove a constitutional claim

for ineffective assistance of counsel, the petitioner must first show that his or her counsel's

representation "fell below an objective standard of reasonableness." *Id.* at 688. Second, the

petitioner must demonstrate actual prejudice from the deficiency. *Id.* at 694.

In conjunction with *Strickland*, the decision of the Supreme Court in *Roe v. Flores-*

*Ortega* governs ineffective assistance of counsel claims for failure to file a notice of appeal. *See*

528 U.S. 470 (2000). In *Flores-Ortega*, the Supreme Court held that:

> [C]ounsel has a constitutionally imposed duty to consult with the
> defendant about an appeal when there is reason to think either
> (1) that a rational defendant would want to appeal (for example,
> because there are nonfrivolous grounds for appeal), or (2) that this
> particular defendant reasonably demonstrated to counsel that he
> was interested in appealing.

17

*Id.* at 480. This determination must take into account "all the information counsel knew or should have known." *Id.*

If a consultation about appeal has occurred, counsel performs deficiently only by failing to follow the defendant's express instructions with respect to an appeal. *Id.* at 478. "[A] criminal defense attorney's failure to file a notice of appeal when requested by his client deprives the defendant of his Sixth Amendment right to the assistance of counsel, notwithstanding that the lost appeal may not have had a reasonable probability of success." *United States v. Peak*, 992 F.2d 39, 42 (4th Cir. 1993). Moreover, "an attorney is required to file a notice of appeal when unequivocally instructed to do so by his client, even if doing so would be contrary to the plea agreement [because the defendant has waived his right to appeal] and harmful to the client's interests."[9] *United States v. Poindexter*, 492 F.3d 263, 273 (4th Cir. 2007).

If the attorney received no express instruction to file a notice of appeal, and no consultation has occurred, a court must determine "whether counsel's failure to consult with the defendant itself constitutes deficient performance." *Flores-Ortega*, 528 U.S. at 478. The prejudice prong of *Strickland* requires "that counsel's deficient performance must actually cause the forfeiture of the defendant's appeal. If the defendant cannot demonstrate that, but for counsel's deficient performance, he would have appealed, counsel's deficient performance has

---

[9] The Court notes that a split of authority exists on the issue of whether a lawyer is *per se* ineffective when the lawyer fails to file a notice of appeal despite his client's wishes, even when the defendant has waived his right to appeal and has no meritorious issues to raise. A minority of circuits hold that counsel is not *per se* ineffective for honoring a client's written waiver of appeal instead of the client's later oral instruction to appeal. *See, e.g., Nunez v. United States*, 546 F.3d 450, 456 (7th Cir. 2008); *United States v. Mabry*, 536 F.3d 231, 240-42 (3d Cir. 2008); *see also United States v. Arevalo*, No. 5:07-153-JMH-JGW, 2010 WL 5391459, at *2 (E.D. Ky. Dec. 22, 2010). Recognizing that this non-binding precedent exists, this Court nonetheless adheres to the principles announced by the United States Court of Appeals for the Fourth Circuit. *See United States v. Poindexter*, 492 F.3d 263, 265 (4th Cir. 2007).

not deprived him of anything, and he is not entitled to relief." *Id.* at 484. "Thus, to prevail on an ineffective assistance claim for failing to note an appeal, a defendant need not 'demonstrate that his hypothetical appeal might have had merit,' but rather only that 'but for counsel's deficient conduct, he would have appealed.'" *Jiminez v. Vaughan*, No. 3:07cv639, 2008 WL 2329767, at *3 (E.D. Va. June 5, 2008) (*quoting Flores-Ortega*, 528 U.S. at 486).

### B.   Brown's Claim Fails

#### 1.   Brown Did Not Timely Instruct Jackson to File an Appeal

The record demonstrates that Brown did not instruct Jackson to file an appeal within the ten-day period following his sentencing. The testimony that he did ask counsel to file an appeal lacks credibility for the reasons discussed above. *See supra* Part III.F. Conversely, Jackson testified credibly that Brown never instructed him to file an appeal in a timely manner. The contemporaneous record supports Jackson's testimony.

#### 2.   Jackson Had No Duty to Consult with Brown Regarding an Appeal

Absent an express instruction to file a notice of appeal, the Court must consider whether Jackson had a duty to consult with Brown about an appeal. *Flores-Ortega*, 528 U.S. at 480. The Constitution requires counsel to consult with the defendant about an appeal only "when there is reason to think either (1) that a rational defendant would want to appeal (for example, because there are nonfrivolous grounds for appeal), or (2) that this particular defendant reasonably demonstrated to counsel that he was interested in appealing." *Id.* "Consult," as defined by the Supreme Court, means to advise "the defendant about the advantages and disadvantages of taking an appeal, and [make] a reasonable effort to discover the defendant's wishes." *Id.* at 478. Whether the defendant proceeded to trial or pled guilty becomes a highly relevant factor to this inquiry. *Id.* If the defendant pled guilty, the court should consider whether the defendant

19

received the sentence bargained for in a plea agreement and whether the defendant waived some or all rights to appeal in the plea agreement. *Id.*

The Court finds that Jackson had no duty to consult with Brown about an appeal. First, the record demonstrates that a rational defendant in Brown's position would not have pursued an appeal. Brown pled guilty pursuant to a written plea agreement and waived his right to appeal any sentence within the statutory maximum or the manner in which that sentence was determined. Brown ultimately received a sentence within the advisory guideline range, and below the statutory maximum. Further, by pleading guilty, Brown avoided a potential charge which would carry an additional 60-month mandatory minimum sentence.

Brown, by counsel, waived his objections to the guideline computations in open court. Given the absence of any objections, Judge Hudson adopted the guidelines as computed by the probation officer. Judge Hudson selected Brown's sentence after making an individualized assessment of his case, and any challenge to the reasonableness of that sentence would face a highly deferential standard on appeal. *United States v. Evans*, 526 F.3d 155, 161 (4th Cir. 2008). Brown's sentence was also within the advisory guideline range and thus is presumptively reasonable. *United States v. Mendoza-Mendoza*, 597 F.3d 212, 217 (4th Cir. 2010). Based on these considerations, Brown cannot demonstrate that a rational defendant would have wanted to appeal his sentence.

Brown likewise has failed to demonstrate that he showed any interest in filing an appeal during the ten-day appeal period. Brown's testimony that he told Jackson to file an appeal lacks credibility. Jackson, however, testified credibly that Brown never requested an appeal and did not express an interest in appealing. Indeed, instead of demonstrating an interest in appeal, the record reflects that Brown hoped to cooperate with the Government and receive a sentence

reduction. Accordingly, the Court finds that Jackson had no duty to consult with Brown regarding an appeal.

### V. Statute of Limitations

On May 8, 2012, the United States filed a Motion for Leave to File, requesting permission to file a supplemental response. (Docket No. 65.) The supplemental response would assert the statute of limitations defense, arguing that Brown filed his § 2255 motion about a month and a half after the statute of limitations had run. (Docket No. 65-1.) Likewise, the Government's post-hearing proposed findings of facts and conclusions of law argues that Brown filed his § 2255 motion beyond the one-year period of limitations. (*See* Evid. Hr'g Tr. 32:6-16, 45:20-46:7.) However, the Government fails to address whether Brown may be entitled to belated commencement.

Pursuant to § 2255, a one-year period of limitation applies, but runs from the latest of "the date on which the judgment of conviction becomes final" or "the date on which the facts supporting the claim or claims presented could have been discovered through the exercise of due diligence." 28 U.S.C. § 2255(f)(1), (4). Because Brown's claim that his attorney failed to file an appeal as instructed involved allegations of affirmative misrepresentations regarding the status of an appeal, he might be entitled to belated commencement under § 2255(f)(4). *See Wims v. United States*, 225 F.3d 186, 190 (2d Cir. 2000); *United States v. Crawley*, No. 3:07cr488, 2012 WL 32402, at *2 (E.D. Va. Jan. 5, 2012). The resolution of the statute of limitations defense would necessitate an inquiry into the veracity of Brown's contention that he instructed his attorney to file an appeal and that he received affirmative misrepresentations as to the status of that appeal, thus overlapping with the resolution of the merits of Brown's claim.

Because Brown's claim lacks factual merit, the Court need not resolve the statute of limitations defense. Accordingly, the Court RECOMMENDS that the Government's Motion for Leave to File be DENIED AS MOOT.

### VI. Conclusion

For the foregoing reasons, the Magistrate Judge RECOMMENDS that the Court DENY AS MOOT the Government's Motion for Leave to File, DISMISS Brown's remaining claim, and DENY Brown's § 2255 motion.

Brown is ADVISED that he may file specific written objections to the Report and Recommendation within fourteen (14) days of the date of entry hereof. Each objection should be labeled with the corresponding heading from the Report and Recommendation, should be numbered, and should identify with specificity the legal or factual deficiencies of the Magistrate Judge's findings. Failure to file specific objections in a timely manner to the Report and Recommendation may result in the entry of an Order denying the motion. *See* Fed. R. Civ. P. 72(b). It may also preclude further review or appeal from such judgment. *See Wright v. Collins*, 766 F.2d 841, 845 (4th Cir. 1985) (noting the general rule that "a party who fails to object to a magistrate's report is barred from appealing the judgment of a district court adopting the magistrate's findings").

Let the Clerk send a copy of the Report and Recommendation to all counsel of record and to the Honorable Henry E. Hudson.

And it is so ORDERED.

/s/

M. Hannah Lauck
United States Magistrate Judge

Richmond, Virginia
Date: 8-2-12

22